**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TANYA JOANN WALKER, ) | |
| ) | CASE NO. 1:12-cv-01284 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE SARA LIOI |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Tanya Joann Walker ("Walker") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On December 9, 2008, Walker filed an application for POD and DIB alleging a disability onset date of October 26, 2001. (Tr. 11.) Her application was denied both initially and upon reconsideration.

On July 9, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Walker, represented by counsel, and an impartial vocational expert ("VE") testified. On July 21, 2010, the ALJ found Walker was able to perform her past relevant work and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age thirty-six (36) on her date last insured (Tr. 74), Walker is a "younger" person under social security regulations.  *See* 20 C.F.R. § 404.1563(c).  Walker has a high school diploma and completed one quarter of college. (Tr. 27-28.)  She has past relevant work as a machine operator. (Tr. 15.)

*Hearing Testimony*

At the hearing, Walker testified as follows:

- Between 1989 and 2000, she was a factory machine operator and performed packing and assembly work. (Tr. 28.)  Initially, the jobs were mostly standing, but her last job involved about two hours of sitting and six hours of standing/walking. (Tr. 29.)

- She injured her ankle requiring surgery in 1996.  This made it difficult to perform the standing/walking and lifting requirements of her job. (Tr. 29-30.)  Her work involved lifting ten pounds or less. (Tr. 30, 41.)

- She was able to drive during the relevant time period, but at the time of the hearing, she had problems operating foot pedals. (Tr. 31.)

- She experiences constant numbness on the fingertips of her right hand due to diabetes, which started in the past year. (Tr. 31-32.)

- She began noticing skin cancers on her face in 2000, and was referred to Dr. Foglietti by her dermatologist. (Tr. 32.)  At the time, Dr. Foglietti performed only one procedure.  Years later, she developed more skin lesions and underwent at least three more procedures. (Tr. 33.)

- She explained that the large gap in her treatment after 2004 was caused by her lack of health insurance and difficult financial situation. (Tr. 34-35.)

- Her skin cancer prevents her from going outside during the day because she suffers painful sunburns after five minutes.  She uses a sun screen with an SPF of 85, the highest available.  However, it is not always effective in protecting her skin. (Tr. 37.)

- Performing household chores causes her to be "down for the count" for two to three days due to soreness she experiences in her foot. (Tr. 39.)

- Fumes cause her breathing problems, as one nostril is smaller since her surgery. (Tr. 39.)

- Due to pain in her ankle and foot, she cannot walk 100-feet without taking multiple breaks, though she could do so a "a couple of years ago." (Tr. 39-40.)

- She can stand in one-place for two hours at the most.  Between 2003 through 2005, she could stand for six hours in a whole day. (Tr. 40.)

- Up until 2005, there were no limitations on the amount she could lift. (Tr. 40-41.)

- She quit a factory job that she had in 1999 or 2000, because she believed the plant was about to close. Her subsequent job, which started out as a temporary job but became full-time, ended in May 2000 when she was laid off because the business was "going downhill." (Tr. 42-43.) She tried obtaining other jobs, but could not handle the constant standing. (Tr. 43.)

- Her skin problems have become worse since 2005. However, in response to her counsel's question, she stated her skin problems before the end of 2005 were "similar to now." (Tr. 44.)

- Also in response to her counsel's question, she stated that she had similar problems in 2005 with her foot and performing work around the house as she currently does. (Tr. 44.)

The VE testified that Walker's past relevant work was primarily as a machine operator/packager, which is light and unskilled. (Tr. 46.) The ALJ posed the following hypothetical to the VE:

> I want you to assume an individual the same age, education, and work experience as the claimant. I would like you to further assume this hypothetical individual is able to lift and/or carry 20-pounds occasionally, ten-pounds frequently. Stand and/or walk for six hours of an eight-hour day. Sit for about six-hours of an eight-hour day. Is not able to operate foot pedals. Is limited to occasional climbing, but no ladders, ropes, or scaffolds. Occasional balancing and occasional crawling.

(Tr. 46-47.)

The VE testified that such an individual would be able to perform the work of a machine operator, Dictionary of Occupational Titles ("DOT") § 559687-074. (Tr. 47.) The VE indicated that the job usually does not require the use of foot pedals, as hand controls are normally used. *Id*. The VE also testified that said job typically required no climbing, no balancing, no crawling, little to no exposure to fumes, smoke, dust, and gases, and is generally not performed outside. (Tr. 47-48.) The VE indicated that his testimony was consistent with the DOT. (Tr. 48.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

3

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Walker was insured on her alleged disability onset date, October 26, 2001, and remained insured until December 31, 2005.[2] (Tr. 13.) Therefore, in order to be entitled to POD and DIB, Walker must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Walker established a medically determinable, severe impairment, due to status post left ankle surgery; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Walker was found capable of performing her past relevant work, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 13.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Walker was not

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

[2] At the hearing Walker's counsel agreed that December 31, 2005 was Walker's date last insured, and that there was no application for Supplemental Security Income Under Title XVI before the ALJ. (Tr. 23-24.)

disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on

the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

### *Listing 13.02*

The Court will first address Walker's second assignment of error, wherein she asserts that the ALJ failed to minimally analyze her skin cancer under Listing 13.02(C) or 13.02(E).  (ECF No. 11 at 11-12.)

In his decision, the ALJ recognized that Walker was diagnosed and treated for skin cancer, and that her condition worsened over time.  (Tr. 13.)  Nonetheless, the ALJ found that there was simply no evidence to support a finding that such condition caused significant, work related limitations for a period of twelve consecutive months prior to December 31, 2005, Walker's date last insured.  *Id.*  Walker does not point to any evidence of record that suggests her skin cancer caused any limitation, exertional or non-exertional, in her ability to perform basic work activities.

Despite the ALJ's finding that her skin cancer was non-severe prior to December 31, 2005, Walker argues that the ALJ erred by failing to evaluate her skin cancer under the aforementioned listings.  At step three, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  To meet a listed impairment, a claimant must satisfy all of the criteria in the listing.  *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002)

(*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)). Here, the ALJ found that Walker "did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 13.) Listing 13.02 reads as follows:

> 13.02 Soft tissue tumors of the head and neck (except salivary glands--13.08--and thyroid gland--13.09).
>
> ***
>
> C. Recurrent disease following initial antineoplastic therapy, except recurrence in the true vocal cord.
>
> OR
>
> ***
>
> E. Soft tissue tumors of the head and neck not addressed in A–D, with multimodal antineoplastic therapy. Consider under a disability until at least 18 months from the date of diagnosis. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system.

20 C.F.R. § 404, App'x. 1.

While the ALJ does not specifically discuss Listing 13.02, "Sixth Circuit case law does not require a heightened articulation standard at step three of the sequential evaluation process." *See Marok v. Astrue,* 2010 WL 2294056, *3 (N.D. Ohio, Jun. 3, 2010) (*quoting Bledsoe v. Barnhart*, No. 04-4531, 165 Fed. App'x 408, 411 (6th Cir. Jan.31, 2006)) (*citing Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)). The Commissioner points out that there is simply no evidence that Walker received antineoplastic[3] therapy prior to her date last insured, or, for that matter, thereafter. (ECF No. 12 at 12.) There is evidence that Dr. Foglietti urged Walker in November of 2009, four years after the date last insured, to see a chemotherapy specialist about possible Moh's chemosurgery. The Sixth Circuit has observed that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v.*

---

[3] An "antineoplaston" is an agent used to "inhibit the growth of tumor cells; used investigationally in the treatment of cancer." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (30th ed. 2003.); *see also* MERCK MANUAL OF DIAGNOSIS AND THERAPY 1065-71 (19th ed. 2011) (providing a listing various antineoplastic drugs used in *chemotherapy*) (emphasis added).

*Soc. Sec. Admin.*, 88 Fed. App'x 841, 845 (6th Cir. 2004); *Walton v. Astrue*, 773 F.Supp.2d 742, 750 (N.D. Ohio 2011). A claimant must provide medical evidence of her impairments "during the time you say that [she is] disabled." 20 C.F.R. § 404.1512(c). The crucial date in a social security case is the "date [that] claimant's insured status expired." *Barnett v. Sec'y of Health & Human Servs.*, 1987 WL 36614, at *3 (6th Cir. 1987).

As such, the Court finds that substantial evidence supports the ALJ's determination that the listings, including 13.02, were not met or equaled. To the extent Walker believes that her condition deteriorated after her date last insured, she "retains the right to submit a new application for benefits based upon the newly-obtained evidence of claimed disability." *Id.* (*citing Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988)). Although the Court recognizes that Walker is no longer insured and may not necessarily qualify for Supplemental Security Income, neither POD nor DIB can be awarded where disability ensues after a claimant's eligibility for such benefits expired.

*Credibility*

In her remaining claim, Walker argues that the ALJ committed reversible error when he questioned her credibility despite medical evidence supporting her symptoms. (ECF No. 11 at 8.) More specifically, Walker asserts that the ALJ did not provide a sufficiently specific analysis supporting his credibility finding. (ECF No. 11 at 10.)

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. 20 C.F.R. § 404.1529; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability"). It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."

8

SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

If the claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record. *Id*. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

Contrary to Walker's argument, the ALJ did perform a credibility analysis. He found that "[Walker's] testimony concerning the nature of her symptoms is credible, [but] her allegations describing the severity of her impairments during the alleged period of disability are not substantiated in light of the evidence showing a lack of treatment and inconsistent statements." (Tr. 15.) To the extent Walker contends that the ALJ did not consider the seven factors contained in Social Security Ruling ("SSR") 96-7p, this too is inaccurate. Pursuant to

SSR 96-7p, an ALJ should consider the following when determining the credibility of a claimant's alleged symptoms:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p at *3.

First, it bears noting that the ALJ found material portions of Walker's testimony to be credible. The ALJ plainly accepted Walker's testimony that "during the period from 2003 to 2005, she could stand about six hours total in an eight-hour workday and had no lifting restrictions. The claimant also denied any problems sitting on the job except for occasional back pain." (Tr. 14.) He also credited her testimony that she had difficulty using foot pedals, as the RFC for a limited range of light work is consistent with the testimony cited by the ALJ. (Tr. 13-14.) The ALJ further noted that for the ensuing five years after the surgery, but prior to the alleged onset date, Walker's daily activities included the ability to work full-time as a machine operator. (Tr. 14.) The ALJ also discussed Walker's treatment for her ankle pain during the relevant time period noting the lack of "regular treatment for problems involving [her] left ankle." (Tr. 15.) An ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005). Here, where the testimony was consistent with the limited range of light work prior to the date last insured and there was no evidence of regular medical treatment, it cannot reasonably be argued that the

10

ALJ's credibility assessment was deficient.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the defendant

s/ Greg White<br>
United States Magistrate Judge

Date: January 18, 2013

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).**  *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**